**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION**

**WHEELING POWER COMPANY –
MITCHELL PLANT, as successor to
KENTUCKY POWER COMPANY –
MITCHELL PLANT,**

> **Plaintiff,**

**v.**

**LOCAL 492, UTILITY WORKERS
UNION OF AMERICA, AFL-CIO,**

> **Defendant.**

> ELECTRONICALLY
> FILED
> 9/19/2022
> U.S. DISTRICT COURT
> Northern District of WV

Civil Action No. 5:22-cv-229 (Bailey)

## COMPLAINT

Plaintiff Wheeling Power Company – Mitchell Plant, as successor to Kentucky Power Company – Mitchell Plant ("Company"), by counsel, for its Complaint against Defendant Local 492, Utility Workers Union of America, AFL-CIO ("Defendant" or "Local 492"), states as follows:

## I.    SUMMARY OF THE CAUSE OF ACTION

1.      In this civil action, the Company seeks the vacation of an arbitration award that does not draw its essence from the parties' collective bargaining agreement ("Agreement") and that the arbitrator rendered only by exceeding his contractually limited powers.

2.      Specifically, on September 4, 2022, Arbitrator Matthew M. Frankiewicz exceeded his powers when he found that the Company violated the parties' Agreement when it assigned work to non-members of Local 492.

3.      Arbitrator Frankiewicz quoted, and thus acknowledged, that the parties' Agreement explicitly limited his authority such that he was authorized only to resolve the sole question of

whether the assignment of work "'directly result[ed] in the layoff or discharge of any employee covered by this Agreement.'" (Arbitration Opinion and Award, attached as "Exhibit 1," at 3.)

4.      Arbitrator Frankiewicz also acknowledged (indeed, it was undisputed) that no such employee was laid off or discharged. (Ex. 1, at 7.)

5.      Although Arbitrator Frankiewicz's contractual authority ended there, he did not end his analysis there. Instead, he proceeded to discuss irrelevant facts and answer other questions. Ultimately, by disregarding the express limit on his authority and focusing on contractual provisions and facts that were irrelevant to the one question he had the authority to decide, Arbitrator Frankiewicz concluded that a violation had occurred, and he sustained Defendant's grievance.

6.      In rendering his award, the arbitrator clearly exceeded the explicitly narrow limits of his authority under the Agreement. Therefore, his award must be vacated.

## II.      JURISDICTION AND VENUE

7.      This action arises under section 301 of the Labor Management Relations Act ("LMRA") of 1947, as amended, 29 U.S.C. § 185; and the Federal Arbitration Act, 9 U.S.C. § 10. The Court has jurisdiction over this action pursuant to that provision and 28 U.S.C. §§ 1331, 1337, 2201, and 2202.

8.      This Court is the proper venue for this civil action pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 185.

## III.      PARTIES

9.      Plaintiff, the Company, is a corporation organized and existing under the laws of the State of West Virginia, with its principal office in the city of Columbus, Ohio.

10.      The Company is an electric utility that operates the Mitchell Plant, which is a coal-

fired power plant located in Marshall County on West Virginia Route 2 south of Moundsville, West Virginia.

11.     The Mitchell Plant has a total generating output of 1560 megawatts, buys coal and other products through interstate commerce, and produces electricity that moves through a power grid that encompasses several states.

12.     The Company employs approximately 174 people at the Mitchell Plant; also, there are contractors and others who often perform services on the plant premises. The Company is an "employer" within the meaning of 29 U.S.C. § 152(1) of the LMRA.

13.     Defendant, the Utility Workers Union of America, Local 492, represents for collective bargaining purposes certain production and maintenance employees employed by the Company at the Mitchell Plant. Therefore, Defendant is a labor organization that represents employees in an industry affecting commerce within the meaning of 29 U.S.C. §§ 152(5), 185.

## IV.     COLLECTIVE BARGAINING AGREEMENT

14.     A collective bargaining agreement ("Agreement") governs the terms and conditions of certain maintenance and production workers employed by the Company to work at the Mitchell Plant.

15.     The Agreement was originally intended to be effective from June 1, 2018 through May 31, 2021, but on October 30, 2020, the parties to the Agreement signed a document indicating their agreement to extend the Agreement for a twelve-month period, rendering the Agreement effective through midnight on May 31, 2022. That is the agreement that governed the arbitration that is the subject of this civil action.

16.     The Agreement was initially entered into between Defendant and Kentucky Power Company – Mitchell Plant. In Article 2, Section 4 of the Agreement, Kentucky Power Company

– Mitchell Plant agreed "that the adoption of this Agreement will be a condition of the sale, divestiture or transfer of any facility covered by this Agreement."

17.     On September 1, 2022, as part of a sale, Wheeling Power Company became the operator of the Mitchell Plant and thus the successor employer. For ease of reference, throughout this Complaint, the "Company" refers to the owner/operator of the Mitchell Plant, which at all relevant times was either Kentucky Power Company and/or Wheeling Power Company.

18.     As the successor employer, Plaintiff Wheeling Power Company – Mitchell Plant recognized and adopted the Agreement, and it is now the entity that is bound by Arbitrator Frankiewicz's Opinion and Award and the entity that would have responsibility to satisfy any remedy stemming from that Opinion and Award, if that arbitration award were not to be vacated or otherwise set aside.

19.     Article 2 of the Agreement contains a union recognition clause, in which the Company recognized Local 492 "as the exclusive bargaining representative for all the physical employees of the Mitchell Plant," specifically, certain production and maintenance employees, "in accordance with the provisions of the Labor-Management Relations Act of 1947, as amended." (Agreement, attached as "Exhibit 2," at 2.)

20.     Pursuant to Article 13, Section 2 of the Agreement, the Agreement incorporates the parties' full and complete understanding, and the Agreement is the "sole source of any and all rights or claims which may be asserted in arbitration[.]" (Ex. 2, at 50.)

21.     Article 3 of the Agreement contains the management rights clause. Crucially, it provides, in part, as follows:

> The Company shall have the right to assign or contract work to persons or organizations not represented by the Union. This right is limited only to the extent that it shall not be exercised when such actions directly result in the layoff or discharge of any employee

covered by this Agreement. In the event of arbitration over the Company's exercise of the right set forth herein, the sole question for the arbitrator shall be whether the Company has violated the foregoing limitation.

(Ex. 2, at 5.)

22.     Article 10 of the Agreement is titled "GRIEVANCE PROCEDURE." It governs disputes and disagreements between the Company and employees represented by Local 492, with some inapplicable exceptions. The grievance procedure provides for three grievance steps, and if the grievance is not settled during those three steps, then it "shall be submitted to arbitration" in a prescribed manner. (Ex. 2, at 41-47.)

23.     The Agreement provides that "[t]he arbitrator shall not have the power to change or recommend any change of the provisions of this Agreement[.]" (Ex. 2, at 45.)

## V.      EVENTS LEADING TO ARBITRATION

24.     For various reasons (including but not limited to retirements and health issues), in 2021, the Mitchell Plant was facing attrition issues as its employees left their employment at the plant.

25.     Also in 2021, the Mitchell Plant learned that it was expected to receive more gypsum and limestone barges than it had planned to receive, which would cause an increase in the amount of work that would need to be done at the plant.

26.     Mitchell Plant management therefore was trying to figure out how to staff the Mitchell Plant in order to have sufficient personnel to handle the extra shipments, as it could not handle them with only the employees who remained at the Mitchell Plant. Management thought that the plant may have to engage contractors if it could not find another solution.

27.     At the time (in 2021), the Mitchell Plant was owned and operated by Kentucky Power Company, a wholly owned subsidiary of American Electric Power Company, Inc. ("AEP"),

which also owned a number of other subsidiary electric utilities.

28.     One of AEP's other wholly owned subsidiaries was AEP Generating Company, which operated the Cook Coal Terminal ("CCT") in Metropolis, Illinois.

29.     While Mitchell Plant management was trying to figure out how to adequately staff the Mitchell Plant, a major fire occurred at the CCT.

30.     Instead of laying off CCT union employees while the Terminal was being rebuilt, a plan was implemented to utilize CCT employees at two other plants, one of which was the Mitchell Plant.

31.     Initially, eight (and eventually a total of ten) CCT employees volunteered to work at the Mitchell Plant. Some CCT employees worked at the Mitchell Plant as early as mid-August 2021. Some of them stopped working at the Mitchell Plant and returned to CCT by the end of 2021, and the rest did so on or before February 24, 2022. Thus, the Mitchell Plant utilized the services of CCT employees for approximately six months.

32.     The Agreement was in effect the entire time that the CCT employees worked at the Mitchell Plant.

33.     No member of Local 492 was laid off or discharged as a result of the temporary transfer of CCT employees to the Mitchell Plant. This fact is not disputed by the Company or Defendant.

### VI.     GRIEVANCE AND ARBITRATION

34.     On August 18, 2021, Local 492 filed a grievance, in which it alleged that the transfer of CCT employees to the Mitchell Plant violated the parties' Agreement. The parties were unable to resolve the grievance, and so it proceeded to arbitration. Arbitrator Frankiewicz was selected to hear and resolve the matter, and on June 27, 2022, an arbitration hearing was conducted.

35.     Arbitrator Frankiewicz's written Opinion and Award acknowledged two crucial facts:

(a) Arbitrator Frankiewicz acknowledged that the Agreement explicitly limited the scope of his authority. Specifically, he quoted the Agreement's management rights clause, which preserved the Company's right to assign or contract work to persons or organizations not represented by Defendant, with the sole limitation that such right shall not be exercised when it directly resulted in the layoff or discharge of a member of the bargaining unit; and which provided that, "[i]n the event of arbitration over the Company's exercise of the right set forth herein, the sole question for the arbitrator shall be whether the Company has violated the foregoing limitation." (Ex. 1, at 3.)

(b)     Based on the undisputed evidence, Arbitrator Frankiewicz acknowledged that "[n]o Mitchell bargaining unit employees were laid off or discharged as a consequence of the transfer of employees from CCT to Mitchell." (Ex. 1, at 7.)

36.     Nevertheless, Arbitrator Frankiewicz sustained the grievance. (Ex. 1, at 11.)

37.     In sustaining the grievance, the arbitrator exceeded his powers.

## VII.     CAUSE OF ACTION: THE ARBITRATION AWARD MUST BE VACATED

38.     Paragraphs 1 through 37 are hereby incorporated and realleged as if fully stated herein.

39.     Arbitrator Frankiewicz exceeded his power when he rendered his Opinion and Award.

40.     Arbitrator Frankiewicz's authority to resolve the parties' dispute stemmed solely from the Agreement.

41.     The Agreement expressly limited Arbitrator Frankiewicz's authority, such that his sole authorized job was to resolve the question of whether any Local 492 member was laid off or discharged as a result of an assignment of work to non-members of Local 492.

42.     Arbitrator Frankiewicz found, based on the undisputed evidence, that no Local 492 member was laid off or discharged.

43.     Pursuant to the Agreement, that was the only question he had the authority to resolve.

44.     Having resolved that question in the Company's favor based on the undisputed evidence, he was constrained to deny the grievance.

45.     However, Arbitrator Frankiewicz substantially exceeded his contractually-conferred power by disregarding the unambiguous limit on his authority in order to sustain Defendant's grievance.

46.     As a result, instead of acting within his authority and rendering an Opinion and Award that drew its essence from the Agreement, Arbitrator Frankiewicz rendered an Opinion and Award that reflects his own notions of industrial justice.

47.     Under the Federal Arbitration Act, a court reviewing an arbitration award may vacate the award "where the arbitrators exceeded their powers[.]" 9 U.S.C. § 10. If an arbitrator acts "'outside the scope of his contractually delegated authority,'" thereby issuing an award that reflects the arbitrator's own notions of justice rather than one that draws "'its essence from the contract,'" then the arbitrator's determination may be overturned. *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569, 133 S. Ct. 2064, 2068, 186 L. Ed. 2d 113 (2013) (citations omitted). Thus, an arbitration award may be vacated if the arbitrator "'disregard[s] or modif[ies]

unambiguous contract provisions.'" *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 235 (4th Cir. 2006) (citation omitted; alterations in *Patten*).

48.     Because Arbitrator Frankiewicz exceeded his powers and disregarded unambiguous contract provisions in rendering his Opinion and Award, and because his Opinion and Award therefore does not draw its essence from the Agreement but instead reflects his own notions of industrial justice, his Opinion and Award is invalid and unenforceable, and it should be vacated and set aside.

**WHEREFORE**, Plaintiff Wheeling Power Company – Mitchell Plant, as successor to Kentucky Power Company – Mitchell Plant, respectfully requests that the Court:

(a)     Vacate Arbitrator Frankiewicz's Opinion and Award and

(b)     Order such other and further relief as the Court deems proper and necessary.

*/s/ Kaitlin L.H. Robidoux*

Bryan R. Cokeley (WV Bar No. 774)
Kaitlin L.H. Robidoux (WV Bar No. 12342)
STEPTOE & JOHNSON PLLC
P.O. Box 1588
Charleston, WV 25326-1588
Telephone (304) 353-8000
Facsimile (304) 353-8100
Bryan.Cokeley@Steptoe-Johnson.com
Kaitlin.Robidoux@Steptoe-Johnson.com

*Counsel for Plaintiff*