**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling**

**WHEELING POWER COMPANY -
MITCHELL PLANT**, as successor
to Kentucky Power Company - Mitchell
Plant,

                    Plaintiff - Counter Defendant,

     v.                                 **CIVIL ACTION NO. 5:22-CV-229**
                                          Judge Bailey

**LOCAL 492, UTILITY WORKERS
UNION OF AMERICA, AFL-CIO**,

                    Defendant - Counter Plaintiff.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO VACATE ARBITRATION OPINION AND AWARD

Pending before this Court is plaintiff's Motion to Vacate Arbitration Opinion and Award [Doc. 5] and accompanying Memorandum of Law in Support [Doc. 6]. Also pending is defendant's Motion for Summary Judgment [Doc. 19] and Memorandum in Support [Doc. 20]. Each Motion has been fully briefed and, accordingly, is ripe for decision. For the reasons contained herein, plaintiff's Motion to Vacate Arbitration Opinion and Award will be denied, and defendant's Motion for Summary Judgment will be granted.

## BACKGROUND

On September 19, 2022, plaintiff Wheeling Power Company ("plaintiff"), as successor to Kentucky Power Company, filed suit against defendant Local 492, Utility Workers Union of

America AFL-CIO ("defendant"). *See* [Doc. 1]. Plaintiff brought suit pursuant to the Federal Arbitration Act, arguing impropriety by the Arbitrator Matthew M. Franckiewicz ("the Arbitrator") in an underlying grievance dispute concerning assignment of work to out-of-state union workers who were unrepresented by defendant. According to plaintiff, under the parties' collective bargaining agreement ("the Agreement") the arbitrator exceeded his authority in sustaining defendant's grievance. Based on these contentions, plaintiff argues the arbitrator's award must be vacated by this Court.

Conversely, defendant argues that the arbitrator's award fell entirely within the scope of the Agreement thereby entitling defendant to summary judgment.

## I.    Relevant Facts

Plaintiff owns and operates the Mitchell Plant in Marshall County, West Virginia, where it utilizes coal to generate electricity.  [Doc. 6 at 2].  Certain production and maintenance workers at the Mitchell Plant are represented by defendant for purposes of collective bargaining.

### A.    The Agreement

The parties effectuated the Agreement on June 1, 2018. *See* [Doc. 6-1]. Later, the parties agreed to a one-year extension of the Agreement, such that it remained "in full force and effect through Midnight, May 31, 2022." *See* [Doc. 6-2].

The Agreement initially bound defendant and Kentucky Power Company; however, on September 1, 2022, as part of a sale, plaintiff became the operator of the Mitchell Plant and thus the employer of defendant's members at the Mitchell Plant.  *See* [Doc. 6-4].  The

Agreement contains a successorship clause, in which plaintiff agreed "that the adoption of this Agreement will be a condition of the sale, divestiture or transfer of any facility covered by this Agreement." *See* [Doc. 6-1 at 4]. Accordingly, as a result of the sale, on September 1, 2022, plaintiff recognized and adopted the Agreement, and it is now the entity bound by Arbitrator Frankiewicz's Opinion and Award, and the entity that would have responsibility to satisfy any remedy stemming from that Opinion and Award.[1]

Article 2 of the Agreement contains a recognition clause, in which plaintiff recognized "the [defendant] as the exclusive bargaining representative for all the physical employees of the Mitchell Plaint," specifically production and maintenance employees, "in accordance with the provisions of the Labor-Management Relations Act of 1947, as amended." [Doc. 6-1 at 2].

Section 2 of Article 13 of the Agreement contains the parties' agreement "that this contract incorporates their full and complete understanding and that any prior written or oral agreements or practices are superseded by the terms of this Agreement. The parties further agree that no such written or oral understandings or practices will be recognized in the future unless committed to writing and signed by the parties as a Supplement to this Agreement." [Id. at 50]. The same provides, "This Agreement shall govern the parties' entire relationship and shall be the sole source of any and all rights or claims which may be asserted in arbitration hereunder or otherwise." [Id.].

Article 3 of the Agreement is titled "RIGHTS OF MANAGEMENT." [Id. at 5]. Article 3

---

[1]The parties do not appear to dispute the binding nature of the Agreement; rather, the dispute stems entirely from the alleged impropriety of the arbitrator's award based on his application of the Agreement.

provides as follows, in its entirety:

      (a)    Except as otherwise provided in this Agreement, the [plaintiff], in the exercise of its functions of management, shall have the right to decide the policies, methods, safety rules, direction of employees, assignment of work, equipment to be used in the operation of the Company's business, and to determine the hours of work and schedules, the right to hire, discharge, suspend, discipline, promote, demote, and transfer employees, and to release employees because of lack of work or for other proper or legitimate reasons, subject, however, to the employee's privilege of bringing a grievance as provided in this Agreement. The enumeration of the above management prerogatives shall not be deemed to exclude other prerogatives not enumerated.

      (b)    The [plaintiff] shall have the right to assign or contract work to persons or organizations not represented by the [defendant]. This right is limited only to the extent that it shall not be exercised when such actions directly result in the layoff or discharge of any employee covered by this Agreement. In the event of arbitration of the [plaintiff's] exercise of the right set forth herein, the sole question for the arbitrator shall be whether the [plaintiff] has violated the foregoing limitation.

[Id.].

      The Agreement also permits plaintiff to hire temporary employees, defined as "those employees hired for full-time employment for a temporary period (not normally to exceed six

4

(6) months) for a specific job or relief work." [Id. at 2–3]. It provides that "[p]ersons hired for temporary or relief jobs shall not be subject to the terms and provisions of this Agreement." [Id. at 6].

Article 10 of the Agreement is titled "GRIEVANCE PROCEDURE." [Id. at 41]. It governs disputes and disagreements between employees and plaintiff, with several exceptions. [Id.]. The grievance procedure provides for three grievance steps, and if the grievance is not settled as a result of those steps, then the Agreement provides that the matter "shall be submitted to arbitration" in a prescribed manner. [Id. at 41–46]. Further, the Agreement provides that "[t]he arbitrator shall not have the power to change or recommend any change of the provisions of [the] Agreement[.]" [Id. at 45].

The Agreement does not establish any jurisdictional work or otherwise provide that certain work is guaranteed to bargaining unit members. The parties represent that they have negotiated collective bargaining agreements for decades, and the National Labor Relations Board certified the bargaining unit in 1971. [Id. at 2].

**B.    The Assigned Work**

In 2021, the Mitchell Plant experienced reduction in its workforce. As explained by plant manager Douglas Rosenberger, plant management expressed concern over staffing at the Mitchell Plant given extra shipments, and he testified "there was no way we were going to be able to handle it all internally with the folks we had available at the time." *See* [Doc. 6-3 at 65–96]. Mr. Rosenberger informed management of the staffing issue because the Mitchell Plant was "starting to run out of options" and thought it would need to engage contractors if it could not implement any other solution. [Id. at 72].

At the relevant time, the Mitchell Plant was owned and operated by Kentucky Power Company, a wholly owned subsidiary of American Electric Power ("AEP"). One of AEP's other subsidiaries, AEP Generating Company, operated the Cook Coal Terminal ("CCT") in Metropolis, Illinois. In 2021, CCT sustained a fire, and CCT employees were facing layoff. *See* [Doc. 3 at 62]. Therefore, Mitchell Plant management called Mr. Rosenberger "and mentioned that he may have an option for us, and that was considering the Cook Coal Terminal folks to come and help us out for a period of time because that influx of projected barges was suppose[d] to come over the next several months. It wasn't projected to be permanent." [Id. at 72].

Initially, eight CCT employees went to the Mitchell Plant to work temporarily in lieu of layoff from CCT. [Id. at 24]. They began work in August 2021, and worked alongside defendant's members. [Id. at 30; Doc. 6-5 at 2]. Defendant's president Jason Wensel testified during the underlying arbitration that defendant's members continued to do their own jobs and were offered two hours of overtime work after each shift during this time period, while the CCT employees "just filled in as needed." [Doc. 6-3 at 16, 56–57].

It appears to be undisputed that none of defendant's members were laid off or discharged as a result of the transfer of CCT employees to the Mitchell Plant. [Id. at 37–38, 74]. As of February 22, no CCT employee was still working at the Mitchell Plant, meaning CCT employees worked there for no more than approximately six months. [Id. at 35–36].

### C.    The Grievance and Arbitration

On August 18, 2021, defendant filed a first-step grievance with plaintiff, in which it challenged the use of CCT workers at the Mitchell Plant under Article 2 of the Agreement "and virtually every other provision of the contract." [Doc. 6-6].  In the first, second, and third steps of the grievance process, plaintiff denied the grievance based on Article 3(b) of the Agreement, which preserved plaintiff's right to assign or contract work to persons or organizations not represented by defendant. [Id.].  On November 30, 2021, defendant wrote to plaintiff indicating its intent to submit the grievance to arbitration. [Id.].

Following the arbitration hearing, both parties simultaneously submitted post-arbitration briefs. *See* [Docs. 6-7 & 6-8].  In plaintiff's brief, it noted the management rights clause, arguing that the clause permitted it to contract out or assign work to persons outside of the bargaining unit. [Doc. 6-7 at 13, 18–20].  Therein, plaintiff stated, "There is only one restriction. The assignment of work to persons or organizations not represented by [defendant] must not directly result in the layoff or discharge of a [defendant] represented employee." [Id. at 16]. Plaintiff's brief also argued that the Agreement expressly limited the arbitrator's authority to resolve the sole question of whether plaintiff violated that limitation on its right to assign or contract work; plaintiff contended, undisputedly, that it had not. [Id. at 18–20].

Moreover, plaintiff argued that "[t]he fact that no [defendant] members were laid off or discharged during the period when CCT employees were working at Mitchell Plant should cease any further review and result in a summary denial of the grievance . . .. Both [plaintiff] and [defendant] must be held to [their] agreements" regarding plaintiff's right to assign or contract work and the sole limitation on that right.  [Id. at 20].

In its post-arbitration brief, defendant conceded that "none of its members were laid off or discharged as a result of the transfers" of CCT employees to the Mitchell Plant. [Doc. 6-8 at 8]. Instead, defendant argued that the Arbitrator had to determine whether the Mitchell Plant's use of CCT employees "constitute[d] contracting out or whether it violate[d] the Recognition provision" of the Agreement. [Id. at 8]. Moreover, defendant argued that the CCT employees were not contractors thereby constituting a violation of the Recognition clause. [Id. at 7–13].

### D.    The Arbitrator's Award

In his award, the Arbitrator noted that the parties' Agreement permitted the Company to assign or contract work and limited his authority such that he was authorized to resolve the sole question of whether the assignment of work "'directly result[ed] in the layoff or discharge of any employee covered by this Agreement.'"   [Doc. 6-9 at 3].  He further informed that plaintiff had relied on its management "right to make work assignments to persons not represented by the Union" so long as a layoff did not result, and that plaintiff had stressed the restriction on his authority.  *See* [Doc. 6-9 at 9].  The Arbitrator also found that no defendant member was laid off or discharged.  [Id. at 7].

Thereafter, the Arbitrator opined as to whether a third-party would be able to distinguish a defendant member from a CCT employee while they were working at the Mitchell Plant based, for example, on the color of their hard hats, the look of their badges, their duties, and their supervisors. [Id. at 9–10]. Based on this consideration, the Arbitrator concluded that the CCT employees were not temporary employees because, although their assignments were temporary, the term of their employment was "indefinite" because it was not "limited to six

months if the repairs at CCT took longer than that to accomplish." [Id. at 10–11]. Accordingly, the Arbitrator sustained the grievance, retained jurisdiction, and returned the case to the parties to make an attempt at "compromise and rough justice." [Id.].

## LEGAL STANDARDS

### I.    Arbitration Review

The Fourth Circuit "has repeated, time and again, that judicial review of arbitration awards is extremely limited–in fact, it is among the narrowest known to the law." *Washington Gas Light Co. v. Int'l Brotherhood of Teamsters, Local 96*, 594 F.App'x 774, 779 (4th Cir. 2014) (quotations omitted) (citing *U.S. Postal Serv. v. American Postal Workers Union, AFL-CIO*, 204 F.3d 523, 527 (4th Cir. 2000)).  "Convincing a federal court to vacate an arbitral award is a herculean task." *Warfield v. Icon Advisors, Inc.*, 26 F.4th 666, 669 (4th Cir. 2022).

Indeed, the Supreme Court of the United States explained that "[j]udicial review of a labor-arbitration decision" is not merely limited, but "very limited." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam).  A court must "determine only whether the arbitrator did his job–not whether he did it well, correctly, or reasonably, but simply whether he did it." *Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union*, 76 F.3d 606, 608 (4th Cir. 1996).

As articulated by the Fourth Circuit:

We have consistently observed that arbitration must be final to be effective.

Permitting judicial second-guessing of arbitral awards would transform a

9

binding process into a purely advisory one, and ultimately impair the value of arbitration for labor and management alike.

*ICWUC & Its Local Union 45C v. PPG Industries, Inc.*, 97 F.App'x 400, 403 (4th Cir. 2004) (citations omitted).

In deciding whether the arbitrator "did his job," any reasonable doubt on this matter "must be resolved in favor of enforcing the award." *Ethyl Corp. v. USWA*, 768 F.2d 180, 185 (7th Cir. 1985) (citing *USW v. Enterprise Wheel & Car*, 363 U.S. 593, 597–98 (1960)). Applying this principle, the Fourth Circuit has recognized that "[e]very presumption is in favor of the validity of the award." *Richmond, Fredericksburg & Potomac R.R. Co. v. Transp. Comm'ns Intl' Union*, 973 F.2d 276, 278 (4th Cir. 1992).

When reviewing an arbitrator's award entered pursuant to a collective bargaining agreement, "[a]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the court cannot overturn his decision simply because it disagrees with his factual findings, contract interpretations, or choice of remedies." *United Paperworkers Int'l Union, AFL-CIO v. MISCO, Inc.*, 484 U.S. 29, 30 (1987).  "It is only when the arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable." *Garvey*, 532 U.S. at 509 (quoting *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)).

However, the Supreme Court of the United States has also informed that if an arbitrator acts "'outside the scope of his contractually delegated authority,'" thereby issuing an award that reflects the arbitrator's own notions of justice rather than one that draws "'its essence frm

10

the contract,'" then the arbitrator's determination should be overturned. ***Oxford Health Plants LLC v. Sutter***, 569 U.S. 564, 569 (2013) (citations omitted).  As the Fourth Circuit has stated, when an award does not draw its essence from the parties' contract, "a federal court has 'no choice but to refuse enforcement of the award.'" ***Patten v. Signator Ins. Agency, Inc.***, 441 F.3d 230, 235 (4th Cir. 2006) (quoting ***Int'l Union, United Mine Workers of Am. v. Marrowbone Dev. Co.***, 232 F.3d 383, 389 (4th Cir. 2000) (internal quotation marks omitted)).

If an arbitration award "is not 'rationally inferable from the contract,'" then it fails to draw its essence from the agreement. ***Apex Plumbing Supply, Inc. v. U.S. Supply Co.***, 142 F.3d 188, 193 n.5 (4th Cir. 1998) (quoting ***Patten***, 441 F.3d at 235).  Thus, an arbitration award may be vacated if the arbitrator "'disregard[s] or modif[ies] unambiguous contract provisions.'" ***Patten***, 441 F.3d at 235 (citation omitted).

Collective bargaining agreements are to be interpreted "according to ordinary principles of contract law, at least when those principles are not inconsistent with federal labor policy." ***M & G Polymers USA, LLC v. Tackett***, 574 U.S. 427, 435 (2015) (citation omitted). "In this endeavor, as with any other contract, the parties' intention control." *Id*. (citation omitted). "Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent." *Id*. (citation omitted).

As the Fourth Circuit has summarized:

An arbitrator does not have carte blanche [ ] . . . to "dispense his own brand of industrial justice." ***Enterprise Wheel***, 363 U.S. [at 597]. Rather, "an arbitrator is confined to interpretation and application of the collective bargaining

11

agreement." *Id.* "[H]is award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation courts have no choice but to refuse enforcement of the award." *Id.* The requirement that the award "draw its essence" from the parties' agreement means that "[t]he arbitrator may not ignore the plain language of the contract." [*United Paperworkers Int'l Union v.*] *Misco*, 484 U.S. [29, 38 (1987)]. When the arbitrator ignores the unambiguous language chosen by the parties, the arbitrator simply fails to do his job.

*U.S. Postal Serv.*, 204 F.3d at 527 (citation omitted); *see also United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960) ("an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice."); *Brown & Pipkins, LLC v. Serv. Emps. Int'l Union*, 846 F.3d 716, 723–24 (4th Cir. 2017) (award is unenforceable when an arbitrator ignores an agreement's plain language or "'strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice.'" (citation omitted)).

## II.   Summary Judgment

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets

this burden, the nonmoving party "may not rest upon the mere allegations or denials of its pleading, but must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323–25; *Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted). Although all justifiable inferences are to be drawn in favor of the non-movant, the non-moving party "cannot create a genuine issue of material fact through mere speculation of the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Further, "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish

13

the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

## DISCUSSION

After careful review, this Court declines to set aside the arbitration award. As this Court construes the award, the arbitrator found:

1.      That while third party contract employees hired under Article 3(b) of the contract wear different badges and hard hats from the union members, the CCT employees wore union badges and helmets identical to the regular employees.

2.      That Article 3(b) governs the hiring of "persons or organizations **not represented by the Union**."

3.      That as members of the Union, the CCT employees are required, by the contract's Recognition Clause, to receive the same wages and benefits as regular employees.

As noted above, this Court's authority is to "determine only whether the arbitrator did his job–not whether he did it well, correctly, or reasonably, but simply whether he did it." *Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union*, 76 F.3d 606, 608 (4th Cir. 1996).

Furthermore, this Court finds that the arbitrator's decision draws its essence from the contract and was not some lark where the arbitrator sought to impose his own ideas of fairness. The Award will be upheld.

## CONCLUSION

For the reasons stated above, defendant's Motion for Summary Judgment [**Doc. 19**] is **GRANTED** and plaintiff's Motion to Vacate Arbitration Opinion and Award [**Doc. 5**] is **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: January **20**, 2023.

JOHN PRESTON BAILEY
**UNITED STATES DISTRICT JUDGE**